UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON


CIVIL ACTION NO. 07-209-GWU


CLARENCE R. BRYANT,                                          PLAINTIFF,


VS.                        **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.


**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the court on cross-motions

for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.      Is the claimant currently engaged in substantial gainful activity?
        If yes, the claimant is not disabled.  If no, proceed to Step 2.
        See 20 C.F.R. 404.1520(b), 416.920(b).

2.      Does the claimant have any medically determinable physical
        or mental impairment(s)? If yes, proceed to Step 3.  If no, the
        claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.      Does the claimant have any severe impairment(s)--i.e., any
        impairment(s) significantly limiting the claimant's physical or
        mental ability to do basic work activities?  If yes, proceed to

1

07-209  Clarence R. Bryant

Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

3

07-209  Clarence R. Bryant

First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

07-209  Clarence R. Bryant

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

07-209  Clarence R. Bryant

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.

6

07-209  Clarence R. Bryant

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Clarence R. Bryant, was found by an Administrative Law Judge (ALJ) to have a "severe" combination of impairments including coronary artery disease, hypertension, aortic regurgitation, "rule out" transient ischemic attack, being status post arthroscopic surgery (with debridement and partial meniscectomy) for a left knee meniscal tear, a history of gout, obesity, sleep apnea, a right cheek mass, major depressive disorder, an anxiety-related disorder, and borderline intellectual functioning.  (Tr. 27).  Nevertheless, based in part on the testimony of a Medical Expert (ME) and a Vocational Expert (VE), the ALJ determined that Mr. Bryant retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 30-7). The Appeals Council declined to review (Tr. 16-18), and this action followed.

At the second of two administrative hearings, the ALJ asked the VE whether a person of the plaintiff's age of 39, eleventh grade education, and work experience

7

07-209  Clarence R. Bryant

as an assembler, inspector, and sanitation coordinator could perform any jobs if he were limited to "light" exertion and also had the following non-exertional limitations. He: (1) could not crawl or climb ladders or ropes; (2) could occasionally balance, kneel, crouch, stoop, or climb stairs or ramps; (3) could perform no more than "frequent" handling with his right hand, or otherwise work primarily with the whole hand; (4) should avoid concentrated exposure to extreme heat, cold, dust, humidity, wetness, fumes, odors, chemicals, gases, and unprotected heights or dangerous machinery; and (5) had borderline intellectual functioning and suffered from a depressive disorder, but retained the mental capacity to understand, retain, and complete simple repetitive work tasks, concentrate and persist in completing simple work tasks, function in an object-focused work environment, adequately relate to coworkers and supervisors in such a work environment, and adapt to routine changes and pressures in a work environment without excessive productivity demands.  (Tr. 652-4).  Although the hearing transcript is marked at this point with numerous notations that it was "inaudible," the VE appeared to respond, and the ALJ found, that there were two jobs that such a person could perform.  (Tr. 654).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff alleged disability due to a wide variety of problems, including gout, eye problems, hearing loss, foot and knee pain, the residuals of a stroke, high

8

blood pressure, diabetes, nervousness, sleep apnea, and a heart attack which occurred after he originally applied for benefits.  (Tr. 598-625, 646-54).  A stent had been placed in his heart, but he was still having chest pain, and could not afford visits to his cardiologist or medication.  (Tr. 646, 650-1).

The plaintiff raises several issues on appeal, which the court finds meritorious.  Although the current record does not support an award of benefits, a remand will be required for additional consideration.

Mr. Bryant was psychologically examined by Marthanne Manion, a certified psychologist with autonomous functioning, in March, 2004.  (Tr. 180).  She conducted a clinical interview and performed some objective testing, which showed, among other things, a verbal IQ score of 76, a performance IQ score of 63, and a full scale IQ score of 67.  (Tr. 184).  However, she felt that these results underestimated his true intellectual ability because his right side was affected by a recent stroke and he had limited movement in his right hand.  (Tr. 185).  This affected the portions of the testing which involved using a pencil. (Id.).  Otherwise, his attitude and cooperation to the testing were good.  (Id.).  The psychologist diagnosed borderline intellectual functioning rather than mild mental retardation.[1]

---

[1]Manion also noted a fifth grade reading ability, which was considerably less than the eleventh grade education presumed by the ALJ's hypothetical question.  (Tr. 185, 654).  It is not clear if the results of the reading examination would have been affected by limitations in the use of the plaintiff's right hand.  The plaintiff also stated that he had had special education for reading, math, and language arts.  (Tr. 183).  This is potentially

07-209  Clarence R. Bryant

Based on the plaintiff's testimony of limited activities, poor sleep, irritability, and social isolation, the psychologist also diagnosed depression, and provided a Global Assessment of Functioning (GAF) score of 40.  (Tr. 183-5).  A GAF score in this range reflects either some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.  Diagnostic and Statistical Manual of Mental Disorders (4th Ed.-- Text Revision) (DSM-IV-TR), p. 34.  Manion concluded, in terms of specific functional restrictions, that Mr. Bryant would have a "markedly limited" ability to carry out and persist at simple, repetitive tasks without special supervision and tolerate the stress and pressure associated with day-to-day work activity.  (Tr. 186).

A state agency psychologist, Jane Brake, reviewed the record at this point and opined that Manion's opinion was not consistent with the preponderance of evidence, including the fact that the plaintiff had reported mainly physical limitations. (Tr. 215).  She did opine that the plaintiff would be "moderately limited" in a number of areas, including some areas not included in the hypothetical question.  (Tr. 213-14).  Another reviewer, Lea Perritt, subsequently agreed with Brake's assessment. (Tr. 254-5).

---

significant because the Commissioner's regulations state that the numerical grade score will be used only if there is no evidence to contradict it.  20 C.F.R. § 404.1564(b) (2005).

07-209  Clarence R. Bryant

Approximately six months after Dr. Perritt's review, the plaintiff sought treatment from the Kentucky River Community Care (KRCC) mental health clinic, complaining of a depressed mood and anxiety. (Tr. 425). When he was evaluated by the staff psychiatrist, Dr. Razvan Vaida, on May 9, 2005, it was noted that he was somewhat restless, had an anxious affect, poor knowledge, an impaired short-term memory, and limited abstraction ability. (Tr. 419-20). Dr. Vaida diagnosed severe recurrent major depressive disorder, depression secondary to chronic pain, "rule out" generalized anxiety disorder and anxiety secondary to chronic pain, agoraphobia, and "rule out" a history of alcohol abuse. (Tr. 421). He did not list specific functional restrictions, but did assign a GAF score of 50. (Tr. 422). A GAF score of 50 reflects serious symptoms or any serious impairment in social, occupational, or school functioning, according to the DSM-IV-TR. Medication was prescribed, but it was apparently ineffective and was changed shortly thereafter. (Tr. 413-14).

At this point, a third state agency psychologist, Dr. Ed Ross, reviewed the evidence and concluded that the available psychiatric data, including the GAF of 50, was "congruent with persuasive collateral descriptions which indicate global markedly restricted domains such that sustained [substantial gainful activity] roles and relationships are precluded." (Tr. 433). Dr. Ross specifically opined that the plaintiff was not able to complete a normal work week or schedule without undue

11

07-209  Clarence R. Bryant

interference from psychiatric symptoms and was not able to relate appropriately or adapt responsively on his own in a competitive context.  (Tr. 433).

While the ALJ rejected the opinion of Dr. Ross, the fact remains that the only examining sources indicated far greater restrictions than found by the ALJ and the only possible professional support for his decision is the earlier reports of the non-examiners, Brake and Perritt, who did not have access to the entire record and specifically commented on the reasons for their differences of opinion with the examining sources.  Therefore, their opinions did not represent substantial evidence to support the ALJ's decision.  Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).[2] At a minimum, the ALJ should obtain the opinion of a medical expert with access to the entire record.

Another shortcoming of the administrative decision is the treatment of evidence from Dr. Vinod Makhija, a cardiologist whom the ALJ described as a treating source.  (Tr. 28).  Following a cardiac catheterization of the plaintiff which showed 80 percent to 90 percent blockage in one heart vessel and 50 percent blockage in another vessel and placement of a stent (Tr. 452-8), Dr. Makhija noted that the plaintiff's anginal pain, positive exercise tolerance test, ejection fraction of

---

[2]Furthermore, as previously indicated, Brake and Perritt listed a number of "moderate" restrictions, at least one of which, a limitation on the ability to travel in unfamiliar places or use public transportation, was not included in the hypothetical question.

12

07-209  Clarence R. Bryant

45 percent, syncope, weakness, and valvular heart disease would restrict him to less than full-time work (Tr. 468).  The ALJ discounted these restrictions for several reasons including the opinion of a state agency reviewer, Dr. James Ramsey, who had completed his evaluation prior to the catheterization (Tr. 231-9) and an interrogatory submitted to Dr. Robert J. Marshall, an ME who did have access to the entire medical evidence.  (Tr. 570).[3]  Dr. Marshall stated that the plaintiff's chief problem was coronary artery disease, but it had been "confined to a single vessel and corrected."  (Tr. 570).  He added that there was no subsequent information regarding further problems.  (Id.).  Although the sequence of events in the transcript is not entirely clear, it appears that in response to a query from the plaintiff's attorney regarding a subsequent office note from Dr. Makhija referring to an "LVOT obstruction secondary to a subaortic membrane as shown on a transesophageal echocardiogram," and Dr. Makhija's comment that surgical excision of the subaortic membrane would need to be considered if the plaintiff became symptomatic with dizziness, pre-syncope, syncope, or worsening shortness of breath (Tr. 567), Dr. Marshall then responded that it was not clear what additional surgery the physician had in mind and asked if it might be related to "the lesion in his cheek" (Tr. 583).[4]

---

[3]The ALJ describes Dr. Marshall as a "board-certified cardiologist" (Tr. 32), but no qualifications are included in the court transcript.

[4]A CT scan from 2002 had shown a "complex mass" in the right aspect of the plaintiff's face.  (Tr. 370).

07-209  Clarence R. Bryant

As counsel for the plaintiff points out, it appears that the ME either did not see or simply overlooked the references to the subaortic membrane and possible surgery. Although the ALJ discounted the significance of the finding based, in part, on the plaintiff's lack of follow-up with the cardiologist, which Mr. Bryant stated he could not afford, and the fact that the cardiologist had only indicated surgery as a possibility and not as a pressing necessity, the oversight reasonably casts doubt on the validity of the ME's review.  Consequently, this is another area which should be addressed on remand.

Finally, the plaintiff correctly notes that the court transcript has numerous notations of inaudibility during the VE's testimony.  (Tr. 654-5).  It is, at best, marginally acceptable in carrying the defendant's burden of showing jobs existing in the economy which the plaintiff can perform.

The decision will be remanded for further consideration.

This the 7th day of May, 2008.

**Signed By:**

_**G. Wix Unthank**_

**United States Senior Judge**

14